IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

CONSTELLATION ENERGY GROUP, INC.*
et al.

               Plaintiffs     *

           vs.             *   CIVIL ACTION NO. MJG-00-2255

CLARK/BARDES, INC.         *
et al.

            Defendants    *

*      *      *      *      *      *      *      *      *

## MEMORANDUM AND ORDER RE: NEW YORK LIFE

The Court has before it Defendant New York Life Insurance
and Annuity Corporation's Motion to Dismiss and the materials
submitted by the parties relating thereto.  The Court finds that
a hearing is unnecessary to resolve this matter.

## I.   BACKGROUND

Plaintiff Constellation Energy Group, Inc. ("Constellation")
is a holding company whose subsidiaries include energy-related
businesses such as Plaintiff Baltimore Gas and Electric Company[1].
In 1987, Constellation amended its Executive Benefit Plan and
Group Life Insurance Plan to replace then-existing life insurance
benefits with a coordinated life insurance program using
individual life insurance policies employing a "split-dollar"
premium arrangement.  A split-dollar arrangement is a method of

---

[1]All Plaintiffs will be collectively referred to as
"Constellation."



paying for a life insurance policy which allows the corporate employer to provide its executives with death benefits under a tax advantaged plan.  As alleged in the Amended Complaint, a split dollar life insurance plan is supposed to work as follows:

- Constellation paid a portion of an employee's annual life insurance premium.

- The employee's policy built up cash surrender value during the course of employment.

- If the employee died while employed, Constellation would be repaid its contribution from the death benefit (tax free to the employee).

- If the employee remained to retirement ("rollout") time, the employee would use the cash surrender value of the policy to repay Constellation its contribution and to buy post-rollout life insurance.

- The plan was to be operated so that the employee would be able to treat the receipt of the cash surrender value at rollout as a recovery of basis with any excess over the premiums paid by the employee recognized as taxable income.[2]

- The plan was to be operated to avoid treatment as a Modified Endowment Contract ("MEC") under § 7702A of the Internal Revenue Code subject to adverse tax consequences.  They include, for example, treatment of the receipt of the cash surrender value at rollout first as taxable

_____

[2]For example, if a policy had $1,000,000 of premium accumulation of which $950,000 was paid by the employer and $50,000 paid by the employee with $800,000 of policy earnings then, on rollout, the payment of $950,000 to Constellation would be considered a non-taxable return of basis in the contract.

2

income.[3]

Amended Complaint ¶ 16.

In 1992, Constellation issued a request for proposal to various insurance brokers and administration service providers, including Defendant Clark/Bardes, Inc. ("CBI"), for purposes of obtaining and servicing new split-dollar life insurance policies. Constellation selected CBI, which represented that it had substantial expertise in the design, implementation and administration of split-dollar life insurance plans, to be its broker and administrator.  Am. Compl. ¶ 15.

CBI recommended a split-dollar program under which Constellation's active eligible employees would surrender existing policies for universal life policies issued by Defendant New York Life Insurance and Annuity Corporation ("NY Life"). Constellation "relied upon CBI and New York Life for the selection and purchase of appropriate insurance products that would meet Constellation's well-known objectives."  Id. ¶ 19. Chief among these objectives was "to provide each plan participant with a specified level of post-rollout life insurance and to allow each participant to reimburse Constellation the

_____

[3]In the example in the foregoing footnote, the repayment of $950,000 to Constellation would be treated as taxable income to the employee to the extent of the $800,000 of policy earnings and only $150,000 would be treated as nontaxable return of basis in the contract.

3

total premiums paid for the participant," and "to avoid adverse tax consequences (i.e., status as 'modified endowment contracts' and 'forced out income.')"  Id. ¶ 14.

As a marketing tool, and to entice Constellation to use NY Life insurance policies to fund its split-dollar program, NY Life disseminated to Constellation and its broker, CBI, insurance illustrations and illustration software, free of charge.  The illustration software included testing for "adverse tax consequences" in the first year of the program, 1994.

In late March 1999, CBI advised Constellation for the first time that a number of policies were projected to have insufficient cash buildup at rollout, defeating the financial objectives of the program.  CBI advised Constellation that there was a failure to include MEC testing capabilities for any period of time after the initial year of the program.  As a result, Constellation will not attain the financial goals set forth in the Plans.  If Constellation were able to attain such goals, it would be at funding levels at which many of the policies would risk MEC status, substantially affecting the anticipated tax advantages of the program.

On July 21, 2000 Constellation filed the instant lawsuit against CBI.  Constellation amended its Complaint on September 17, 2001 to add NY Life as a defendant on a negligence claim,

4

Count VII.  By the subject motion, NY Life moves to have the
Amended Complaint dismissed against it, asserting that the
instant action is barred by the statute of limitations and that
Constellation fails to state a claim against NY Life.


## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) is a means of
testing the legal sufficiency of a complaint.  "The question is
whether in the light most favorable to the plaintiff, and with
every doubt resolved in his behalf, the Complaint states any
valid claim for relief."  5A Charles Alan Wright & Arthur R.
Miller, Federal Practice and Procedure § 1357 at 336 (2d ed.
1987).  The Court, when deciding a motion to dismiss, must
consider well-pled allegations in a complaint as true and must
construe those allegations in favor of the plaintiff.  See
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jenkins v.
McKeithen, 395 U.S. 411, 421-22 (1969).  The Court must further
disregard the contrary allegations of the opposing party.  See
A.S. Abell Co. v. Chell, 412 F.2d 712, 715 (4th Cir. 1969).
However, a complaint may be dismissed if the law does not support
the conclusions argued, or where the facts alleged are not
sufficient to support the claim presented.

III. DISCUSSION

## A. Statute of Limitations

Under Maryland law,[4] a claim in negligence must be brought within three years from the date the action accrued. Md. Code Ann. Cts. & Jud. Proc. § 5-101; see e.g., Booth Glass Co. Inc. v. Huntingfield Corp., 500 A.2d 641 (Md. 1985). A cause of action "accrues when the claimant in fact knew or reasonably should have known of the wrong." Poffenberger v. Risser, 431 A.2d 677, 680 (Md. 1981).

The Amended Complaint alleges that in late March of 1999, Constellation was notified that NY Life's illustration software failed to include MEC testing capabilities. Am. Compl. ¶ 27-30. However, NY Life asserts that Constellation knew or should have known about the alleged negligence as early as 1994. NY Life cites to the Amended Complaint, in which Constellation alleges that the problems in NY Life's illustration software were "inherent" in that the software "failed to include MEC testing capabilities for any period of time after the initial year of the program." Am. Compl. ¶ 29. Based on these and other similar statements, NY Life asserts that the alleged negligence must have been discovered, or at least should have been discovered, during or immediately after the initial year of the program, 1994.

---

[4]The parties agree that Maryland law applies to this case.

6

The Court does not find NY Life's argument sufficiently persuasive to warrant dismissal. The fact that the alleged problem in the software may have been "inherent" does not inexorably lead to the proposition that Constellation knew or reasonably should have known about it. "Inherent" does not equate to "obvious" and there are no factual allegations in the Amended Complaint from which this Court could conclude that on any possible view of the facts, the failure in the illustration software was "obvious" such that Constellation should have known of it in 1994.

Therefore, the negligence claim is not dismissed as time-barred.

## B.   Failure to State a Claim

In Maryland, in order to establish a cause of action for negligence, a plaintiff must prove: (1) a duty owed to the plaintiff or to a class of which the plaintiff is a part; (2) a breach of that duty; (3) a causal relationship between the breach and the harm; and (4) damages suffered. See Jacques v. First Nat'l Bank, 515 A.2d 756, 758 (Md. 1986); Cramer v. Housing Opportunities Comm'n, 501 A.2d 35, 39 (Md. 1985); Scott v. Watson, 359 A.2d 548, 552 (Md. 1976). NY Life contends that Constellation fails to state a claim in negligence because the

instant case involves purely economic loss and NY Life does not
owe a duty of care to Constellation.

Count seven of the Amended Complaint alleges that New York
Life had a "duty to provide suitable insurance products,
including illustration software and 'as sold' illustrations."
Am. Compl. ¶ 102.   Constellation asserts that the "intimate
nexus" between NY Life and Constellation gave rise to this duty.

> Where the failure to exercise due care creates a
> risk of economic loss only, courts have generally
> required an intimate nexus between the parties as
> a condition to the imposition of tort liability.
> This intimate nexus is satisfied by contractual
> privity or its equivalent. By contrast, where the
> risk created is one of personal injury, no such
> direct relationship need be shown, and the
> principal determinant of duty becomes
> foreseeability.

Jacques 515 A.2d at 759-60 (emphasis added).

The parties agree that there is no contractual privity in
the instant suit (since the illustrations and illustration
software were gratis); therefore, "its equivalent" must be
present.  Id.  Constellation asserts that an intimate nexus is
created if the following is shown:

> 1.   the professional was aware that his service
>      or product was to be used for a particular
>      purpose;
>
> 2.   the use of the service or product was in
>      furtherance of which a known party was
>      intended to rely; and

> 3.    conduct on the part of the professional
>       illustrates an understanding of the third
>       party's reliance.

Plaint. Opp. p. 20, citing, generally, Walpert, Smullian &
Blumenthal v. Katz, 762 A.2d 582, 598 (Md. 2000).

Constellation properly alleges facts which could be held to
establish the elements of an intimate nexus.  The Amended
Complaint alleges that (1) NY Life was aware of the purposes for
which its illustrations would be used, (2) Constellation and its
agents relied on NY Life's illustrations and illustration
software, and (3) NY Life "knew or reasonably should have known
that the public, including Constellation and its agents and
experts would rely upon NY Life's illustration software."  Am.
Compl. ¶ 100.

Although the intimate nexus theory advanced by Constellation
seems to be a novel one in the instant context,[5] "courts should
generally be reluctant to grant a motion to dismiss when the
claim in question asserts a novel theory of recovery.  Novel
theories of recovery are best tested for legal sufficiency in
light of actual, rather than alleged facts."  Branch v. F.D.I.C.,
825 F.Supp. 384, 397 (D.C.Mass. 1993).  Therefore, Count VII
shall not be dismissed.

---

[5]Intimate nexus cases typically arise in the context of the
tort of negligent misrepresentation, or where some fiduciary
relationship exists.  See e.g. Weisman v. Connors, 540 A.2d 783
(Md. 1988).

IV.    CONCLUSION

For the foregoing reasons:

1.    Defendant New York Life Insurance and Annuity
      Corporation's Motion to Dismiss the Amended
      Complaint is DENIED.

2.    The case shall proceed pursuant to the Scheduling
      Order being issued on this date.

SO ORDERED this _____19th_____ day of March, 2002.

_____

Marvin J. Garbis
United States District Judge