IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONSTELLATION ENERGY GROUP, INC.*
et al.
        Plaintiffs        *

       vs.                     *   CIVIL ACTION NO. MJG-00-2255

CLARK/BARDES, INC.          *
et al.
        Defendants       *

*    *    *    *    *    *    *

## MEMORANDUM AND ORDER

The Court has before it Defendant Clark/Bardes, Inc.'s Motion to Alter or Amend or, in the Alternative, Motion to Reconsider with Respect to Counts IV, V and VI and the materials submitted by the parties relating thereto. The Court finds that a hearing is unnecessary to resolve this matter.

I.    BACKGROUND

Plaintiff Constellation Energy Group, Inc. ("Constellation") is a holding company whose subsidiaries include energy-related businesses such as Plaintiff Baltimore Gas and Electric Company[1]. In 1987, Constellation amended its Executive Benefit Plan and Group Life Insurance Plan to replace then-existing life insurance benefits with a coordinated life insurance program using individual life insurance policies employing a "split-dollar"

---

[1] All Plaintiffs will be collectively referred to as "Constellation."



premium arrangement. A split-dollar arrangement is a method of paying for a life insurance policy which allows the corporate employer to provide its executives with death benefits under a tax advantaged plan. As alleged in the Amended Complaint, a split dollar life insurance plan is supposed to work as follows:

- Constellation paid a portion of an employee's annual life insurance premium.

- The employee's policy built up cash surrender value during the course of employment.

- If the employee died while employed, Constellation would be repaid its contribution from the death benefit (tax free to the employee).

- If the employee remained to retirement ("rollout") time, the employee would use the cash surrender value of the policy to repay Constellation its contribution and to buy post-rollout life insurance.

- The plan was to be operated so that the employee would be able to treat the receipt of the cash surrender value at rollout as a recovery of basis with any excess over the premiums paid by the employee recognized as taxable income.[2]

- The plan was to be operated to avoid treatment as a Modified Endowment Contract ("MEC") under § 7702A of the Internal Revenue Code subject to adverse tax consequences. They include, for example, treatment of the receipt of the cash surrender value at rollout first as taxable

---

[2] For example, if a policy had $1,000,000 of premium accumulation of which $950,000 was paid by the employer and $50,000 paid by the employee with $800,000 of policy earnings then, on rollout, the payment of $950,000 to Constellation would be considered a non-taxable return of basis in the contract.

income.[3]

Amended Complaint ¶ 16.

In 1992, Constellation issued a request for proposal to various insurance brokers and administration service providers, including Defendant Clark/Bardes, Inc. ("CBI"), for purposes of obtaining and servicing new split-dollar life insurance policies. Constellation selected CBI, which represented that it had substantial expertise in the design, implementation and administration of split-dollar life insurance plans, to be its broker and administrator. Am. Compl. ¶ 15.

CBI recommended a split-dollar program under which Constellation's active eligible employees would surrender existing policies for universal life policies issued by Defendant New York Life Insurance and Annuity Corporation ("NY Life"). Constellation "relied upon CBI and New York Life for the selection and purchase of appropriate insurance products that would meet Constellation's well-known objectives." Id. ¶ 19. Chief among these objectives was "to provide each plan participant with a specified level of post-rollout life insurance and to allow each participant to reimburse Constellation the

---

[3] In the example in the foregoing footnote, the repayment of $950,000 to Constellation would be treated as taxable income to the employee to the extent of the $800,000 of policy earnings and only $150,000 would be treated as nontaxable return of basis in the contract.

total premiums paid for the participant," and "to avoid adverse tax consequences (i.e., status as 'modified endowment contracts' and 'forced out income.')" Id. ¶ 14.

As a marketing tool, and to entice Constellation to use NY Life insurance policies to fund its split-dollar program, NY Life disseminated to Constellation and its broker, CBI, insurance illustrations and illustration software, free of charge. The illustration software included testing for "adverse tax consequences" in the first year of the program, 1994.

In late March 1999, CBI advised Constellation for the first time that a number of policies were projected to have insufficient cash buildup at rollout, defeating the financial objectives of the program. CBI advised Constellation that there was a failure to include MEC testing capabilities for any period of time after the initial year of the program. As a result, Constellation will not attain the financial goals set forth in the Plans. If Constellation were able to attain such goals, it would be at funding levels at which many of the policies would risk MEC status, substantially affecting the anticipated tax advantages of the program.

On July 21, 2000 Constellation filed the instant lawsuit against CBI, alleging the following causes of action:

        Count I:      Breach of Contract

| | |
|---|---|
| Count II: | Professional Negligence (Program Design) |
| Count III: | Violation of section 404 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001 et seq. |
| Count IV: | Common Law Breach of Fiduciary Duty |
| Count V: | Breach of Contract (Post Program Design) |
| Count VI: | Professional Negligence (Post Program Design) |
| [Count VII: | Negligence claim against NY Life][4] |

On November 16, 2001, CBI moved to dismiss counts I-II and IV-VI of the Amended Complaint, asserting that the state law claims in those counts are preempted by ERISA. On March 19, 2002, this Court issued a Memorandum and Order denying CBI's Motion to Dismiss, based on Constellation's presentation of a somewhat novel factual issue. On April 2, 2002 CBI timely filed the subject Motion to Alter or Amend or, in the Alternative, Motion to Reconsider with Respect to Counts IV, V and VI.

II. LEGAL STANDARD

As stated by Judge Ramsey in Weyerhaeuser Corp. v. Koppers Co., Inc., 771 F. Supp. 1406, 1419 (D. Md. 1991), "A motion for

---

[4]Constellation added this claim when it amended its Complaint on September 17, 2001.

5

reconsideration (or, to alter or amend judgment) made pursuant to Fed. R. Civ. P. 59(e) may be made for one of three reasons: (1) an intervening change in the controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice."  Such a motion "cannot be used to raise arguments which could, and should, have been made before [the determination to be reconsidered] issued."  <u>Federal Deposit Ins. Corp. v. Meyer</u>, 781 F. 2d 1260, 1268 (7th Cir. 1983).

III. <u>DISCUSSION</u>

In the March 19, 2002 Memorandum and Order, the Court found that the common law causes of action for breach of contract, professional negligence and breach of fiduciary duty did not "relate to any employee benefit plan" within the meaning of 29 U.S.C. § 1144(a).  Order p. 11.  The March 19, 2002 Memorandum and Order also found that:

> Specifically, the Amended Complaint limits the non-ERISA claims to CBI's conduct "[t]o the extent that CBI was not acting as a fiduciary under ERISA."  Am. Compl. ¶ 69.  Constellation states that "[t]he fact that CBI served as an ERISA fiduciary at one point does not mean that its conduct was not governed by state law at other points in time."  Plaint. Opp. p. 25.  State law claims against non-fiduciaries who provide services to plans are not preempted.  <u>See</u> <u>Sweeney</u>, 89 F.3d at 1166-67.  Therefore, Constellation

6

>      makes the creative argument that unlawful conduct
>      of an eventual ERISA fiduciary, committed before
>      the party was subject to ERISA, is susceptible to
>      common law causes of action. Although
>      Constellation's contention appears to be somewhat
>      novel, "courts should generally be reluctant to
>      grant a motion to dismiss when the claim in
>      question asserts a novel theory of recovery.
>      Novel theories of recovery are best tested for
>      legal sufficiency in light of actual, rather than
>      alleged facts." Branch v. F.D.I.C., 825 F.Supp.
>      384, 397 (D.C.Mass. 1993).

Order p. 9-11.

Based on the above language, CBI asserts that Counts IV, V and VI, which include factual allegations that occurred after the enactment of the plans at issue, must be dismissed as they are based on alleged violations which occurred after CBI allegedly became subject to ERISA. CBI's assertion is understandable given that the above-cited portion of the March 19, 2002 Order was stated in somewhat chronological terms. Therefore, the Court will take this opportunity to clarify its March 19, 2002 Memorandum and Order.

It is well-settled that an ERISA fiduciary may wear more than one hat; however, an ERISA fiduciary with more than one hat must wear only one hat at a time. Pegram v. Herdrich, 530 U.S. 211, 225 (2000); Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 443-44 (1999). When an ERISA fiduciary is not acting in his "ERISA fiduciary" capacity, he is not subject to ERISA liability

for his actions. <u>Pegram</u>, 530 U.S. at 225-26. Thus, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." <u>Id.</u> at 226.

Count IV is specifically limited to acts by CBI that fall outside the scope of CBI's fiduciary duty under ERISA. <u>See</u> Am. Compl. ¶ 69. Thus, Constellation alleges that there were times when CBI was not wearing its "ERISA fiduciary" hat that it breached common law fiduciary duties.

Similarly, Constellation raises factual issues as to whether CBI's alleged failure to properly design the plans at issue (Count V) thus assuring a certain quality of benefits (Count VI) were actions taken by CBI while wearing its "ERISA fiduciary" hat or in some other capacity. The Court will not, at the dismissal stage, preclude Constellation from making creative arguments regarding the capacity in which CBI was serving at the time of the alleged violations. <u>See</u> e.g. <u>Branch</u>, 825 F.Supp. at 397. Therefore, the Court will not now dismiss Counts IV, V and VI. The Memorandum and Order of March 19, 2002 remains in effect.

IV. **CONCLUSION**

For the foregoing reasons:

1. Defendant Clark/Bardes, Inc.'s Motion to Alter or Amend or, in the Alternative, Motion to Reconsider with Respect to Counts IV, V and VI is DENIED.

2. The March 19, 2002 Memorandum and Order remains in effect.

3. The case shall proceed pursuant to existing scheduling.

SO ORDERED this 21st day of May, 2002.

Marvin J. Garbis
United States District Judge